IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN STEPHEN COLEMAN,        )
#223 809,                    )
     Plaintiff,             )
                            )
v.                           )    CIVIL ACTION NO.: 2:09-CV-311-TMH
                            )              [WO]
RICHARD ALLEN, COMMISSIONER, )
*et al.*,                     )
     Defendants.            )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is pending before the court on a 42 U.S.C. § 1983 complaint filed by Plaintiff, a state inmate, currently incarcerated at the Draper Correctional Center located in Elmore, Alabama.[1] Plaintiff, a practitioner of Native American religion, contends that Defendants violated his First Amendment right to freedom of religion while he was incarcerated at the Easterling Correctional Facility. Plaintiff names as defendants former Commissioner Richard Allen, Warden Louis Boyd, Chaplain Anthony Askew, and Captain Kenneth Sconyers. Plaintiff seeks damages and declaratory and injunctive relief for the alleged violations of his constitutional rights.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claim for relief.  The court then informed Plaintiff that Defendants' special report may, at any time, be treated as a motion for summary judgment, and explained

---

[1]When he filed the instant complaint, Plaintiff was incarcerated at the Easterling Correctional Facility located in Clio, Alabama. During the pendency of this action Plaintiff was transferred to the Draper Correctional Facility.

to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed a response to the special report filed by Defendants. This case is now pending on the aforementioned motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition to Defendants' dispositive motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

issue [– now dispute –] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims properly before this court. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail

on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim(s) for relief.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.

A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the materials before the court indicate that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro*

4

*se* litigant does not escape the burden of establishing a genuine dispute of material fact. *Beard*, 548 U.S. at 525;  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).   Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.   In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II.  DISCUSSION

*A.  Request for Injunctive/Declaratory Relief*

Plaintiff is no longer incarcerated at the Easterling Correctional Facility.   The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.   *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).   As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at Easterling, his requests for declaratory and injunctive relief have been rendered moot.

*B.  Official Capacity Claims[3]*

---

[3]Plaintiff alleges in his complaint that he sues Defendants in their official capacity. In his opposition to Defendants' dispositive motion, he appears to reiterate this position by stating that he is not suing Defendants in their individual capacity (*See Doc. No. 34, ¶9*), but goes on to say that he does not bring this action against  a state or an agency but against Defendants as individuals acting under color of state law. (*Id. at ¶ 14*.) Accordingly, the court considers Plaintiff's claims as brought against Defendants in both their individual and official capacities.  Additionally, while Plaintiff claims that he does not seek money damages

With respect to claims lodged against Defendants in their official capacities, they are immune from monetary damages. "[A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear to the court that Defendants are state officials entitled to sovereign immunity under the Eleventh Amendment for all claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, Defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

---

(*see Doc. No. 34, ¶9, Doc. No. 35, pg. 7*), he also states several times that he seeks "all relief requested," referencing his request for relief as set forth in the complaint. (*See Doc. No. 34, ¶¶ 4, 8.*) The relief sought in the complaint, in addition to injunctive and declaratory relief, requests "Plaintiff's costs in this suit and any additional relief this court deems just, proper, and equitable." (*Doc. No. 1, pg. 7.*) Out of an abundance of caution, and construing liberally a *pro se* litigant's pleadings, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), the court finds that the complaint contains both claims for injunctive and declaratory relief and money damages.

*C.  Individual Capacity  Claims*

Plaintiff alleges that Defendants have violated his constitutional right to the free exercise of his religion by: (1)  imposing certain days and times that Plaintiff can use fire and perform ceremonies; (2) prohibiting him from ordering pre-approved items in a religious order package such as beads, hides, and sinew; (3) prohibiting him from participating in sweat lodge ceremonies; (4) prohibiting him from ordering, using, and/or possessing tobacco on ceremonial grounds; (5) removing him from ceremonial grounds during movement of inmates from segregation to/from the healthcare unit or the administrative building; and (6) imposing disciplinary action on Plaintiff and other inmates who are found on ceremonial grounds without first filling out request slips for Chaplain Askew so that their names may be placed on a list authorizing them to be in that area.  (*Doc. No. 1, pgs. 3-6.*)

Plaintiff's complaint raises claims under the Free Exercise Clause of the First Amendment.  These claims are subject to analysis under the standard pronounced in *Turner v. Safley,* 482 U.S. 78 (1987) and *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987), and their progeny.

The First Amendment's Free Exercise Clause, which has been made applicable to the States through the Fourteenth Amendment, *see Cantwell v. Connecticut,* 310 U.S. 296, 303, (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..." U.S. Const., Amdt. 1.[4]  The law is well settled

_____

[4]The court notes that with respect to each of the claims presented by Plaintiff, he states that Defendants "violated [his] First (1st), Eighth (8th), and Fourteenth (14th) Amendment Rights under  the

that, upon their confinement, inmates do not forfeit all First Amendment rights, including the right to exercise religious practices and beliefs, *O'Lone, supra; Bell v. Wolfish,* 441 U.S. 520 (1979). The Courts have held, however, that a prison rule may infringe on an inmate's First Amendment rights if to do so is necessary to protect legitimate governmental interests, and the rule is no greater than necessary to protect those interests – *i.e.,* if it is not an exaggerated response. *Procunier v. Martinez,* 416 U.S. 396, 413-14 (1974); *Pell v. Procunier,* 417 U.S. 817, 822-23 (1974); *Turner,* 482 U.S. at 87, 89 (the relevant inquiry is whether the prison regulation burdening a fundamental right is reasonably related to legitimate penological objectives of the corrections system, or whether it represents an exaggerated response to those concerns); *O'Lone, supra,* at 348-49.

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), quoting *Pell*, 417 U.S. at 822.  In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id*., at 822. Thus, while inmates

---

Constitution and the Alabama Constitution as well as the Alabama Department of Corrections' Administrative Regulations  to his right to freedom of religion or religious activity by . . . [see Counts 1-7]." (*See Doc. No. 1 pgs. 3-6.*)  Plaintiff does not further articulate any separate and/or distinct Eight or Fourteenth Amendment claim and the court, therefore, has confined its analysis of Plaintiff's allegations as he appears to have intended, *i.e.*, as First Amendment free exercise claims. Any broadening or expansion of his claims in his opposition to Defendants' dispositive motion to include other distinct constitutional claims is not properly before the court. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend h[is] complaint through argument in a brief opposing summary judgment.").

retain a constitutional right protected by the First Amendment to exercise their sincerely held religious beliefs freely, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 345 (1987); *Turner,* 482 U.S. 78; *Lawson v. Singletary*, 85 F.3d 502, 521 (11th Cir. 1996). It is, therefore, clear that preservation of security and order within a jail is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest. *Pell*, 417 U.S. at 823, *Lawson*, 85 F.3d at 512; *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996); *Bell,* 441 U.S. at 546 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").

In a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which burdens the practice of his religion or restricts his free exercise of a sincerely held religious belief. *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *O'Lone*, 482 U.S. at 349; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The burden must be substantial and significantly interfere with an inmate's practice of his religious beliefs. *Hernandez*, 490 U.S. at 699. As noted, a policy is "valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *O'Lone*, 482 U.S. at 349. "[S]uch a standard is necessary if 'prison

administrators..., and not the courts [are] to make the difficult judgments concerning institutional operations.'" *Turner*, 482 U.S. at 89 (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128 (1977)).  Consequently, Defendants do not have the burden of proving the validity of its prison regulation; rather, the burden is on Plaintiff to disprove it.  *Id*. at 89-91.

In determining whether a prison regulation improperly infringes on a prisoner's constitutional rights, the factors to be considered include: (1) whether there is a valid, rational relationship between the regulation and the legitimate government interest it serves; (2) whether there are alternative means of exercising the right available to the inmates; (3) the impact accommodation of the asserted right will have on jail staff and other inmates; and (4) the absence of ready alternatives as evidence of reasonableness of the regulation.  *Turner*, 482 U.S. at 89-91; *Beard*, 548 U.S. at 529, 126 S.Ct. at 2578; *Brunskill v. Boyd,* 141 Fed.Appx. 771, 773-74 (11th Cir. 2005). The fourth factor considers whether "a prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." Overton, 539 U.S. at 136.  However, a "court is not required to weigh evenly, or even consider explicitly, each of the four *Turner* factors."  *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999); *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (interpreting the decision in *Turner* as stating that a court need not weigh evenly or even consider each of the factors, as rationality is the controlling standard).

*i. Constraints on Religious Ceremonies*

Plaintiff complains that the prison's requirement that Native American religious ceremonies be subject to advance scheduling violates his right to practice his religion freely. Defendants assert that prison policies governing use of ceremonial grounds have as their stated purpose maintenance of safety and security at the facility.  Administrative Regulation ["AR"] 333 allows Native Americans access to the ceremonial grounds when the prison yard is open. At times when the prison yard is not open, Native American inmates have access to the ceremonial grounds if the chapel is open or during chapel call but not after sunset. Factors that may be considered regarding additional access to the ceremonial grounds include the number of Native American inmates who will be on the ceremonial grounds, the security level of the prison, and the physical structure of the institution.  Also noted as a concern is the variety of Native American Tribal Belief Systems and the lack of volunteers for each group; Chaplain Walker states that there is only one Native American volunteer available statewide. With regard to the use of fire during ceremonies, Chaplain Walker states that while fire is permitted at Native American ceremonies, the fire must be small, it is only allowed in a designated area of the outside Sacred Ground, and it must not violate any fire safety codes. Defendants contend that a prearranged schedule is necessary to ensure compliance with institutional safety and security concerns, so that correctional personnel who need to know what is going on with the various religious programs with respect to time, date, and space have that information to ensure the continued orderly running of the institution.

(*See Doc. No. 24, Exhs. B, C, D, E.*)

The policy of using a pre-arranged schedule for religious ceremonies appears to the court to be reasonably related to the legitimate and compelling penological interest of maintaining the security and orderly running of the institution. The evidence before the court reflects that Native American inmates at Easterling are provided a reasonable opportunity to worship, and the fact that religious services and ceremonies must be pre-arranged does not amount to a constitutional violation.  An institution must make a "good faith accommodation of the [inmate's] rights in light of practical considerations."  *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997).  Here, Plaintiff fails to demonstrate that the advance scheduling of religious services has unduly burdened his ability to engage in the free exercise of his religion. The court, therefore, concludes that Defendants are entitled to summary judgment on the present claim challenging the scheduling of religious ceremonies as a violation of Plaintiff's right to the free exercise of religion under the First Amendment.

*ii.  Ordering Religious Items*

Plaintiff alleges that his ability to practice his religion is violated by the failure of prison officials to allow him to order pre-approved religious packages containing beads, hides, and sinew. According to Defendants, AR 333 - *Religious Programs Services* - delineates the religious items that Native American inmates may possess. Adherents of the Native American belief system may have in their possession and/or at their religious ceremonies: a sweat lodge, a fire pit, and altar in the outside worship area; moccasins;

armbands; chokers; headbands; a ceremonial pipe; drums and rattles; feathers; a medicine wheel; various herbs including kinnick-kinnick; and a talking stick. (*Doc. No. 24, Exhs. B, C, D, E*.)  AR 333  also  provides that Native American inmates may adorn the outside of their medicine bags with colored beads as well as beads that are black and white. Beads may not be greater than eight millimeters in diameter.  (*Id*.)

 Inmates may order those items that are approved in AR 333. While the Alabama Department of Corrections ["ADOC"] does not prevent an inmate from ordering approved religious items, including beads, as long as the items do not constitute a legitimate security threat, Defendants state that AR 333 does not permit an inmate to order animal sinews or hides. While inmates may file requests or letters of complaint to the Chaplain or Warden regarding a religious dispute, Defendants state that Plaintiff has not submitted a special request in accordance with AR 313 - *Chaplaincy Services and Religious Activities* - with respect to his request for a religious practice which is not authorized. Defendants maintain that special request forms permit correctional officials to determine the validity of the inmate's request regarding a specific religious practice to gauge its impact on security, custody, control, and rehabilitation at the institution.  (*Doc. No. 24, Exh. E*.)

Plaintiff argues that it is his personal belief that he cannot practice his religious beliefs without animal hides and needles in order to make medicine bags, moccasins, pipe covers, and dream catchers.  Plaintiff further appears to assert that there are other material items his religion requires him to have "because of certain reasons," and that other inmates at

Easterling can order these items. (*Doc. No. 34, Coleman Affidavit.*)  It is unclear, however, what items Plaintiff is referring to or the specific religious reason he needs these unspecified items.

As explained above, a  prison regulation that abridges inmates' constitutional rights is "valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.  Further, the First Amendment does not require correctional officials to provide inmates with the opportunity to exercise every aspect of their religions. *See O'Lone*, 482 U.S. at 351-52.  Rather, an inmate's right to exercise his religion is maintained as long as he is not "deprived of all forms of religious exercise ... ." *Id.* at 352. Plaintiff claims in conclusory fashion that he cannot practice his religious beliefs if he does not make his own medicine bag or other "material items" with needles and animal hides and/or sinew, which must be ordered from outside the prison. The evidence before the court reflects that prison regulations clearly allow inmates to possess a variety of items of religious significance to Native American adherents such as medicine bags and dream catchers in their finished form.  Plaintiff has not demonstrated that his inability to hand-make the items in question – as contrasted with his ability to possess such items in their finished form – deprived him of all means of expression, improperly infringed on his ability to practice his religion, or  unduly burdened his ability to engage in the free exercise of his religion. Further, Plaintiff failed to submit a special request in accordance with AR 313 - *Chaplaincy Services and Religious Activities* - to permit correctional officials to determine the validity of his request. Plaintiff has failed to show a

14

violation of his First Amendment rights with respect to this claim and Defendants are, therefore, entitled to  summary judgment.

*iii. Sweat Lodge*

Plaintiff complains that he cannot participate in sweat lodge ceremonies at Easterling because there is no sweat lodge there and, if it did exist the space designated for it is not big enough for its construction.  Plaintiff also maintains that if a sweat lodge is not built with willow sapling it is a disgrace to his religion, and the unavailability of tobacco to use during sweat lodge ceremonies denies him the spiritual experience for which it is intended. (*Doc. Nos. 1, 35*.)

Defendant Askew responds that Plaintiff's allegation that he cannot participate in sweat lodge ceremonies at Easterling because it does not have one is incorrect and misleading.  Easterling is designated as one of the medium custody institutions that may house a sweat lodge structure. According to Askew, the Native American inmate community at Easterling has been given the opportunity to participate in sweat lodge ceremonies on numerous occasions but they have refused to use it over the years for various reasons, including the construction methods used and the use/non-use of tobacco. (*Doc. No. 24, Exhs. B, C, D, E*.)

Plaintiff's conclusory assertions regarding the alleged lack of authenticity and/or legitimacy of the sweat lodge at Easterling do not overcome the reasonable efforts made by prison officials to provide a ceremonial sweat lodge to the Native American Community at

Easterling and are insufficient to show that Plaintiff's First Amendment rights were violated. While Plaintiff contends that a sweat lodge not built from willow saplings and the unavailability of tobacco for sweat lodge ceremonies are a disgrace to his religion, he has not produced any evidence that he could not engage in other religious practices and express his faith in the absence of a "legitimate" sweat lodge, or that a purportedly "non-legitimate" sweat lodge constitutes a substantial infringement.  The court, therefore,  concludes that Defendants are entitled to summary judgment on the present claim challenging the availability of Plaintiff's preferred type of sweat lodge at Easterling as a violation of Plaintiff's right to the free exercise of religion under the First Amendment.

  *iv. Tobacco*

  Plaintiff contends that tobacco is the cornerstone of the Native American's spiritual beliefs and that his inability to order, possess, and use tobacco on the ceremonial grounds at Easterling impermissibly infringed on his First Amendment rights.  Using substitute mixtures such as kinnick-kinnick, Plaintiff claims, is insufficient because tobacco is an integral part of Native American life and there is no adequate substitute. (*Doc. Nos. 1, 34, 35*.)

  Defendants argue that there is valid, rational connection between Easterling's no smoking policy and its legitimate penological interest in the safety, health, and security of both inmates and staff.  Specifically, Defendants maintain that elimination of the sale and use of tobacco products from the institution results in better long-term health of inmates, prevents non-smoking inmates from being exposed to second-hand smoke,  prevents  accidental and

intentional fires from matches and/or cigarettes, eliminates litigation brought by non-smoking inmates exposed to environmental tobacco smoke, and reduces other illicit drug activity. They contend that allowing Native American inmates exclusive access to tobacco products would create a black market for it resulting in bartering, trading, profiteering, extortion, blackmail, assault, and staff misconduct. According to Defendants, after Easterling became smoke-free, Native American inmates were still allowed limited use of tobacco for their ceremonies. After they repeatedly abused the privilege by stealing it from the Chapel where it was stored, hiding it on their "grounds," smuggling it into dormitories, and selling it to other inmates, prison officials eliminated inmate tobacco entirely and allow Native American inmates to use kinnick-kinnick as a reasonable substitute. (*Doc. No. 24, Exhs. A, B, C, E.*)

Thus, Defendants have demonstrated that the no-smoking policy is supported by the legitimate need to promote the health and safety of both inmates and staff alike and to maintain security by preventing a limited group of inmates from taking advantage of a highly-prized and coveted product in the prison system. The tobacco-free environment at Easterling is reasonably related to legitimate security interests and suppression of contraband. *See Wilkinson v. Austin*, 545 U.S. 209, 227 (2005) (In the context of prison management, "[t]he State's first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves.")

With regard to Plaintiff's contention that tobacco is a mandatory ingredient which cannot be substituted with any non-tobacco mixture of kinnick-kinnick, and that traditional

sweat lodge and pipe ceremonies require the use of tobacco, without which he cannot exercise his religion in its "inherited" way, (see Doc. No. 34), Defendants maintain that they have researched the herb "kinnick-kinnick" and determined that it is an acceptable substitute for tobacco and may be used in its place. *(Doc. No. 24, Exhs. A, E, AR 333.*) Plaintiff fails to explain the religious significance of tobacco or demonstrate how tobacco-free kinnick-kinnick rather than tobacco itself imposes a substantial burden on his religious exercise or causes him to depart significantly from his religious traditions.  His contention that traditional Native American teachings require tobacco, and that  there is no reasonable or legitimate substitute," is no more than a conclusory allegation which fails to demonstrate how he has been unduly constrained in the practice of the various aspects of his religion or how his First Amendment right to religious freedom is being unduly curtailed by the tobacco-free policy.  While Plaintiff clearly would prefer the use of tobacco during various Native American ceremonies and rituals, he does not show why the alternative product available to him, is insufficient for his religious needs.

With regard to the effect that Plaintiff's request for an accommodation on the tobacco policy would have on guards, other inmates, and prison resources, *Turner*, 482 U.S. at 89-90, Defendants explain that after Easterling became a tobacco-free environment, Native Americans at the facility were still allowed to use tobacco in their ceremonies.  The valuable nature of tobacco within the prison setting, however, resulted in difficulties for prison staff because inmates stole the tobacco from the chapel, hid it on their "holy" grounds, and

smuggled it into dormitories where the contraband was then sold to other inmates.  (*Doc. No. 24, Exh. A*.) "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of correction officials." *Turner*, 482 U.S. at 90.  Defendants' evidence reflects that accommodating the Native Americans' use of tobacco for limited purposes resulted in more staff concerns with respect to the increased monitoring of the valuable nature of tobacco in the prison system as well as agitation of non-Native American inmates who are former smokers, blackmail, extortion, bartering, trading, and staff misconduct. Because Defendants' evidence shows that the limited use of tobacco at Native American ceremonies resulted in additional concerns and constraints on staffing resources, the court is mindful that it must be "'particularly differential' to prison administrators' regulatory judgments."  *Overton*, 539 U.S. at 135, quoting *Turner* 482 U.S. at 90.  *See Cutter v. Wilkinson,* 554 U.S. 709, 721 (2005) (courts must consider not only security and safety, but the burden the accommodation places on third parties).

Plaintiff submits no alternatives regarding the ADOC tobacco policy but simply argues that there is no legitimate or reasonable substitute for tobacco. As the foregoing discussion shows, however, Defendants have demonstrated that limited tobacco use in the Native American community at  Easterling was unsuccessful and created security issues. Further, Plaintiff fails to demonstrate how the available alternative herb which Native American inmates may use during  religious ceremonies unduly burdens the free exercise of

his religion. The court, therefore, concludes that Defendants are entitled to summary judgment on this claim challenging Plaintiff's right to freely exercise his religion under First Amendment.

   *v.  Interruption of Religious Services*

   Plaintiff complains that during certain inmate movement such as prisoner escorts from the segregation building to the health care unit or administrative buildings, Defendants interrupt Native American ceremonies and order inmates to leave the ceremonial grounds. (*Doc. No. 1*.)  Defendants do not dispute that, on occasion, Native American inmates are ordered to leave the ceremonial grounds during movement of inmates housed in segregation. The ceremonial grounds at Easterling are directly between the segregation unit and the administrative building.  Consequently,  Defendants assert, during movement of  inmates housed on segregation, security reasons dictate the necessity of keeping them separate and apart from the rest of the inmate population.  Specifically, in addition to the variety of reasons an inmate may be in segregation, such as for enemy concerns (known and unknown), mental health issues, or disciplinary violations, segregated inmates are also handcuffed when they are moved to and from various parts of the prison and, thus, security protocol requires that population inmates either be locked down or moved from an area for a short period of time.  (*Doc. No. 24, Exhs. B, C, D, E.*) Requiring that general population inmates change their location or go on lockdown during movement of segregated inmates is reasonably related to the legitimate and compelling penological interest of maintaining the security and

orderly running of the institution. As noted, an institution must make a "good faith accommodation of the [inmate's] rights in light of practical considerations." *Freeman*, 125 F.3d at 737. Under the circumstances, the  undisputedly occasional and brief interruptions to Native American services being performed on ceremonial grounds during movement of segregated inmates does not amount to a constitutional violation.  Plaintiff has failed to demonstrate that the occasional interruption of religious ceremonies unduly burdened his ability to engage in the free exercise of his religion. The court, therefore, concludes that Defendants are entitled to summary judgment on this claim challenging  Plaintiff's right to the free exercise of religion under the First Amendment.

    *vi.  Access to Ceremonial Grounds*

    In order for Native American inmates to access ceremonial grounds, they are required to turn in a request slip containing their name, race, sex, and prison identification number to the Chaplain. Plaintiff complains that if an inmate is found on the Native American ceremonial grounds and his name is not on the Chaplain's request list, the inmate is subject to disciplinary action. Plaintiff contends that this policy violates his right to the free exercise of his religion.  (*Doc. No. 1*.)

    Defendants maintain that the policy requiring inmates to submit a request to the Chaplain identifying them as an adherent to the Native American faith and requesting access to the ceremonial ground is primarily for security reasons, as well as to ensure that inmates have the opportunity to practice their chosen religion. According to defendants, several

security and safety issues are at play, which dictate that correctional personnel be aware of those inmates who have permission to be on Native American ceremonial grounds including, but not limited to: (1) the large inmate population at each major prison facility in Alabama; (2) the fact that there is only one State Chaplain; (3) the fact that over fifteen different religions are accommodated within ADOC prisons; (4) the fact that there may be many sects contained within one particular religion; (5) the variety of religious sects, each of which may require time, space, and place commitments requiring oversight by prison personnel; (6) the location of some Native American ceremonial grounds in areas of limited traffic since, if inmates have identified themselves as followers of the Native American Tribal Belief System, they are permitted in these areas; (7) the Chaplain's being responsible for facilitating the religious programs at the prison facility; (8) the necessity to ensure the peaceful practice of an inmate's chosen religion; (9) prevention of infiltration by other groups such as gangs who attempt to use religious groups as a stage to act upon other criminal or terrorist activity; and (10) the necessity of ensuring that inmates be sent to the appropriate religious program. (*Doc. No. 24, Exhs. B, C, D, E.*)

It is clear that the challenged prison policy requiring inmates to provide correctional personnel with a request slip containing their identifying information before they may have access to the Native American ceremonial grounds is reasonably related to the legitimate and compelling penological interest of institutional safety and security. Defendants have articulated a valid and rational connection between the policy in question and the legitimate

governmental interests asserted to justify it. Defendants maintain that the policy of requiring inmates to submit a request slip seeking approval to access the Native American ceremonial grounds was implemented in an effort to maintain prison safety and security for inmates, correctional personnel, and visitors alike, and plaintiff has failed to show how the policy is not reasonably related to the prison's legitimate interests nor has he alleged that he was not permitted actually to engage in any religious observances or practices as a result of the policy. Accordingly, Defendant's dispositive motion with respect to Plaintiff's claim challenging the "request slip" policy as a violation of his right to the free exercise of religion under the First Amendment is due to be granted.[5]

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (*Doc. No. 24*) be GRANTED;

2. Judgment be ENTERED in favor of Defendants and against Plaintiff;

3. The costs of this proceeding be TAXED against Plaintiff, for which execution may

---

[5]The court notes that Plaintiff's religious exercise claims would fail even if pursued under the Religious Land Use and Institutionalized Persons Act of 2000 ["RLUIPA"] as he does not demonstrate a substantial burden on the practice of his religion with respect to his claims. *Smith v. Allen,* 502 F.3d 1255, 1276–1277 (11th Cir. 2007 (citations omitted) ("To establish a *prima facie* case under [the applicable] section ... of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened.... A 'substantial burden' [is defined] as being 'significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly.'... [T]o constitute a 'substantial burden' on religious practice, the government's action must be 'more than ... incidental' and 'must place more than an inconvenience on religious exercise.' ").

issue; and

4.  This case be DISMISSED with prejudice.

It is further

ORDERED that  on or before **September 21, 2012,** the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 7th day of September, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE